# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MANJULA PATEL, *ET AL.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No: 06-626 (PLF) |
| | ) | |
| THE SOCIALIST PEOPLE'S LIBYAN | ) | |
| ARAB JAMAHIRIYA, *ET AL.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants, the Socialist People's Libyan Arab Jamahiriya, the Libyan External Security Organization, Muammar Qadhafi (in his official capacity), and Abdallah Senoussi (in his official capacity) move to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction, constitutional personal jurisdiction and in the alternative for failure to state a cause of action for which relief can be granted. A memorandum of points and authorities follows.

Dated:        October 18, 2006

Respectfully Submitted,

  //s//
Arman Dabiri
Law Offices of Arman Dabiri &
        Associates, PLLC
1725 I Street, N.W.
(202) 349-3893
Washington, D.C. 20006
E-mail: armandab@worldnet.att.net

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MANJULA PATEL, *ET AL.*,          ) | |
|                                ) | |
|          Plaintiff,       ) | |
|                                ) | Civil Case No: 06-626 (PLF) ) |
| THE SOCIALIST PEOPLE'S LIBYAN    ) | |
| ARAB JAMAHIRIYA, *ET AL.*,        ) | |
|                                ) | |
|          Defendants.   ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER AND PERSONAL JURISDICTION
AND FAILURE TO STATE A JUSTICIABLE CLAIM**

This memorandum is submitted in support of defendants' motion under Rule 12(b)(1) and

(2), F. R. Civ. P., to dismiss the suit for lack of subject-matter and personal jurisdiction, and in

the alternative, under Rule 12(b)(6), for an order dismissing the suit for failure to state claims

upon which relief can be granted.

Undersigned counsel represents the Socialist People's Libyan Arab Jamahiriya, the

Libyan External Security Organization, Muammar Qadhafi (in his official capacity) and

Abdullah Senoussi (in his official capacity).  Undersigned counsel does not represent Muammar

Qadhafi and Abdallah Senoussi in their individual capacity.  Plaintiffs' counsel, Stuart H.

Newberger, Esq., has previously informed undersigned counsel that service on Muammar

Qadhafi and Abdullah Senoussi in their individual capacities, was not perfected.  At the date of

the instant motion there has been no further update by plaintiffs or proof of service filed with the

Court as to whether service on Muammar Qadhafi and Abdullah Senoussi (in their individual

capacity and not service on the Libyan Foreign Ministry in Tripoli, Libya) has been attempted or

perfected.

## FACTUAL ALLEGATIONS

Plaintiffs bring suit against Socialist People's Libyan Arab Jamahiriya, the Libyan

External Security Organization, Muammar Qadhafi (in his official capacity) and Abdullah

Senoussi (in his official capacity) (hereafter "Libya" unless specifically referred to otherwise), as

well as other individual defendants, for the alleged hijacking of Pan American Flight 73

(hereafter "Pan Am 73") on September 5, 1986 in Karachi Pakistan by members of the Abu

Nidal Organization (hereafter "ANO"). (Comp. at 23 - 24). Pan Am 73 originated in Bombay,

India, stopped in Karachi, Pakistan and was en route to Frankfurt, Germany and was finally

destined for New York, N.Y. *Id*. Pan Am 73 was hijacked in Karachi Pakistan when it had 380

passengers on board and as a result of the hijacking 20 passengers and crew members were killed

and 100 people were injured. *Id*. Plaintiffs' complaint asserts that ANO was materially

supported by Libya and that the hijacking of Pan Am 73 was undertaken at the behest of Libya.

*Passim*. Plaintiffs in the complaint are comprised of United States National plaintiffs and non-

United States National plaintiffs.

Claims against Libya and Muammar Qadhafi and Abdullah Senoussi in their personal

capacities are only asserted by the Estate of a United States National who was killed on board

Pan Am Flight 73 as well 41 United States Nationals for torture, extra-judicial killing, hostage

taking and aircraft sabotage.

## JURISDICTIONAL ALLEGATIONS

United States National plaintiffs (at the time of the hijacking) assert subject-matter

jurisdiction over Libya under the "terrorism exception" to the FSIA, codified as 28 U.S.C. §

1605(a)(7).

Non-United States National plaintiffs assert subject-matter jurisdiction against the individual defendants in their individual capacities pursuant to 28 U.S.C. §§ 1331, 1332 and § 1350 (Alien Tort Claims Act).  (Comp. at 26 -27).  Non-US National plaintiffs do not assert that the Court can exercise subject-matter jurisdiction over Libya (or individual defendants Muammar Qadhafi and Abdullah Senoussi in their official capacities) for their claims as the Court must decline to exercise subject-matter jurisdiction over claims of non-U.S. nationals against Libya pursuant to § 1605(a)(7)(B)(ii).

## STATUTES INVOLVED

28 U.S.C. § 1330:

### § 1330.        Actions against foreign States

**(a)** The district courts shall have original jurisdiction without regard to amount in controversy of any non jury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title under any applicable international agreement.

**(b)** Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

**(c)** For purposes of subsection (b), an appearance by a foreign state does not confer personal jurisdiction with respect to any claim for relief not arising out of any transaction or occurrence enumerated in sections 1605-1607 of this title.

28 U.S.C. § 1605(a)(7):

### § 1605.  General exception to the jurisdictional immunity of a foreign state

3

(a) a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

(7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph –

> (A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act; and

> (B) even if the foreign state is or was so designated, if –
> (I) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or

> (ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.

## **ARGUMENT**

### *INTRODUCTION*

The Foreign Sovereign Immunities Act of 1976 ("FSIA") starts with the general rule that foreign states are immune from suit in the United States courts; it also lists the limited circumstances under which a foreign state will be denied immunity and establishes that the Act

is the sole basis for asserting jurisdiction over foreign nations in Unites States Courts. <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 443 (1989). The Supreme Court has held that "a foreign state is presumptively immune from jurisdiction of United States courts, and that unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1604.

In 1996, as part of the comprehensive Antiterrorism and Effective Death Penalty Act ("AEDPA"), <u>Pub.L. No. 104-132, §221(a), 110</u> Stat. 1214 (Apr. 24, 1996) (1996 Amendment), Congress amended the FSIA to add a new exception to sovereign immunity where money damages are sought against foreign states that have been designated as state sponsors of terrorism by the Secretary of State. Suit may be brought under the 1996 Amendment for *personal injury* or *death* caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources . . . for such an act. <u>28 U.S.C. § 1605(a)(7)</u>; *see* <u>Price v. Socialist People's Libyan Arab Jamahiriya</u>, 294 F.3d 82, 87 (D.C. Cir. 2002) (hereafter "<u>Price I</u>).

It is has also been established, both by the Supreme Court, as well as almost all Circuit Courts of Appeals within the federal system, that the FSIA provides the **sole** source of subject-matter jurisdiction in suits against a foreign state. <u>Argentine Republic</u>, 488 U.S. at 434-39. *See* <u>Republic of Austria v. Altman</u>, 541 U.S. 677, 697-700 (2004); <u>Chance v. Taiwan</u>, 86 F.3d 1146 (1st Cir. 1996); <u>Robinson v. Government of Malaysia</u>, 269 F.3d 133, 138 (2d Cir. 2001); <u>Sandoval v. Reno</u>, 166 F.3d 225, 235 (3d Cir. 1999); <u>Velasco v. The Government of Indonesia</u>, 370 F.3d 392, 395 (4th Cir. 2004); <u>In re B-727 Aircraft Serial No. 21010</u>, 272 F.3d 264, 270

(5th Cir. 2001);  <u>Keller v. Central Bank of Nigeria</u>, 277 F.3d 811, 820 (6th Cir. 2002); <u>Sampson</u>

<u>v. Federal Republic of Germany</u>, 250 F.3d 1145, 1148 (7th Cir. 2001);  <u>Flatow v. Islamic</u>

<u>Republic of Iran</u>, 308 F.3d 1065, 1069 (9th Cir. 2002);  <u>Southway v. Central Bank of Nigeria</u>,

328 F.2d 1267, 1271 (10th Cir. 2003);  <u>Alejandre v. Telefoncia Larga Distancia, de Puerto Rico,</u>

<u>Inc.</u>, 183 F.3d 1277, 1282 (11th Cir. 1999). [1]

     Under the FSIA, the foreign sovereign has "immunity from trial and the attendant

burdens of litigation, and not just a defense to liability on the merits." <u>Phoenix Consulting, Inc.</u>

<u>v. Republic of Angola</u>, 216 F.3d 36, 39 (D.C. Cir. 2000) (quoting <u>Foremost-McKesson, Inc. v.</u>

<u>Islamic Republic of Iran</u>, 905 F.2d 438, 443 (D.C. Cir. 1990)).  Once a foreign-sovereign

defendant asserts immunity, the plaintiff bears the burden of producing evidence to show that

there is no immunity and that the court therefore has jurisdiction over the plaintiff's claims.

<u>Daliberti v. Republic of Iraq</u>, 97 F. Supp. 2d 38, 42 (D.D.C. 2000) (citing <u>Amerada Hess</u>, 488

U.S. at 434-35).

     Libya, pursuant to 50 U.S.C. App. § 2405(j) or <u>22 U.S.C. § 2371</u>, was designated as a

State Sponsor of Terrorism by the Secretary of State in 1979.   Designations under these statutes

are made by the Secretary of State for the purposes of regulating, respectively, exports and

foreign aid.   But since the passage of § 1605(a)(7) in 1996, the Secretary's designations affect

foreign sovereign immunity as well.

     On May 12, 2006, however, the President of the United States, through Presidential

Determination No. 2006-14, titled as a "Memorandum for the Secretary of State" provided

---

[1] No case on point was found in the United States Court of Appeals for the Eighth
Circuit.

certification for rescission of Libya's designation as a State Sponsor of Terrorism.  A

Memorandum of Justification accompanied the President's Declaration which was forwarded to

Congress and provided for a review period of 45 days upon the termination of which the

Secretary of State could rescind Libya's terrorist designation at the discretion of the Executive.

A copy of both documents is enclosed for the Court's review as  "Exhibit A".

Libya, on or about June 30, 2006, was subsequently removal from the State Department's

list of designated state sponsors of terrorism.


I.    **LIBYA'S REMOVAL FROM STATE DEPARTMENT LIST**

The Supreme Court previously has upheld the existence of federal court jurisdiction

when jurisdiction depended on a factual determination that had been delegated to the Department

of State.  *See* Jones v. United States, 137 U.S. 202 (1890).   The Second Circuit also has denied

jurisdiction on the basis of an analogous finding by the executive branch. See Matimak Trading

Co. v. Khalily, 118 F.3d 76 (2d Cir.1997), *cert. denied* 522 U.S. 1091(1998).

The Supreme Court case above occurred more than a century ago due to the federal

indictment of an individual for murder on the Caribbean island of Navassa.   *See* Jones, 137 U.S.

at 216.  Jurisdiction to try the individual in an American court depended on the island's status as

American territory.   The Secretary of State had then deemed Navassa as an area "appertaining to

the United States."  *Id*. at 217.   He had made that announcement pursuant to the Guano Islands

Act of 1856, § 1.  The Act empowered the President to declare Caribbean guano islands

American. See *id*. at 209.   The Supreme Court held that such a declaration could be made

"through the Department of State, whose acts in this regard are in legal contemplation the acts of

the president." *Id*. at 217.   The Court went on to hold that the Secretary's statement did in fact make the island one "appertaining to the United States" and that jurisdiction over Jones's crime was therefore proper.  *Id*. at 224.

The Supreme Court has also extensively considered the issue of federal court jurisdiction. The Supreme Court, in relevant part, held:

> Congress may exert its power . . . by imposing judicial function of adjudicating justiciable controversies on the regular federal courts which under the Constitution it has the power to ordain and establish and which I may invest with jurisdiction and <u>from which it may withhold jurisdiction in exact degrees and character which to Congress may seem proper for the public good</u>. (Emphasis added, internal citations and quotes omitted).

<u>National Mut. Ins. Co. of District of Columbia v. Tidewater Transfer Co., Inc.</u>, 337 U.S. 582, 600 (1949).  The Supreme Court has also specifically addressed the issue of withdrawal of jurisdiction of federal courts and the effect of such withdrawal or repeal on pending actions.  The Court, in <u>Bruner v. United States</u>, 343 U.S. 112, 116-117 (1952), in relevant part, held:

> Jurisdiction in such cases was conferred by an act of Congress, and when that Act of Congress was repealed the power to exercise such jurisdiction was withdrawn, and inasmuch as the repealing act contained no saving clause, all pending actions fell, as jurisdiction depended entirely upon the act of Congress . .  This rule-that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law-has been adhered to consistently by this Court.

<u>Id</u>.  In the instant case Congress has delegated the authority of designating foreign states as state sponsors of terrorism, which affects sovereign immunity of that foreign state, to the Executive Branch of the Government.  The Executive Branch has now rescinded Libya's designation. Presidential Determination No. 2006-14 of May 12, 2006 contains no reservation of jurisdiction

for pending cases.[2]

Libya's designation as a state sponsor of terrorism was has also been removed and its sovereign immunity has been reinstated.  Consequently the Court lacks subject-matter jurisdiction to decide the case.  The Court should dismiss this action in its entirety against as Libya.

## II.    **FACTUAL ALLEGATIONS FALSE**

This Circuit has established that if a defendant challenges the factual basis of the Court's subject-matter jurisdiction, the Court may not assume the truth of the facts asserted by the plaintiffs.  Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F3d 1123, 1127 (D.C. Cir. 2004).

Libya explicitly refutes all allegations asserting that Pan Am 73 was hijacked by ANO on behalf of, or because of instructions issued by or support provided by Libya.  Plaintiffs provide only citations and snippets of documents purporting to support plaintiffs' allegations.  Plaintiffs do not provide the documentation for review.

---

[2] Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123 (D.C. Cir. 2004) denied Libya's motion to dismiss on the same grounds.  Kilburn is not controlling authority and that decision being appealed to the United States Court of Appeals for District of Columbia Circuit.

### III.    <u>QADHAFI ENJOYS HEAD-OF-STATE IMMUNITY</u>

Muammar Qadhafi is the head of the Libyan State, a foreign sovereign nation. As such

defendant Qadhafi enjoys head-of-state immunity and the Court should grant Libya's cross-

motion for summary judgment and dismiss plaintiffs' complaint against him.   The issue of head-

of-state immunity has received thorough examination in several cases.  Most recently in <u>Ye v.</u>

<u>Zemin</u>, 383 F3d 620, 625 (7th Cir. 2004) the Court of Appeals reviewed the history of the

immunity and outlined its boundaries.  The Court, in relevant part, held:

> The FSIA does not, however, address the immunity of foreign heads
> of states.  The FSIA refers to foreign states, not their leaders. The
> FSIA defines a foreign state to include a political subdivision, agency
> or instrumentality of a foreign state but makes no mention of heads
> of state. <u>28 U.S.C. § 1603(a)</u>.  Because the FSIA does not apply to
> heads of states, the decision concerning the immunity of foreign
> heads of states remains vested where it was prior to 1976--with the
> Executive Branch. <u>Noriega, 117 F.3d at 1212</u>.  ("Because the FSIA
> addresses neither head-of-state immunity, nor foreign sovereign
> immunity in the criminal context, head-of-state immunity could
> attach in cases, such as this one, only pursuant to the principles and
> procedures outlined in [<i>McFaddon</i> ] and its progeny.  As a result, this
> court must look to the Executive Branch for direction on the
> propriety of Noriega's immunity claim.").

<i>Id</i>.   Two District Courts in this Circuit have requested the position of the Executive Branch on

head-of-state immunity for Qadhafi.  <i>See</i> <u>Collett v. Socialist People's Libyan Arab Jamahiriya</u>,

362 F.Supp.2d 230, 237 (D.D.C. 2005);  <u>Pugh v. Socialist People's Libyan Arab Jamahiriya</u>,

Civil Case No.  02-2206 (HHK).   The position of the United States Department of State is to be

submitted to the Honorable Judge Urbina in the above referenced matter by no later than January

15, 2007.

IV.    **COURT LACKS PERSONAL JURISDICTION OVER LIBYA**

Libya is fully cognizant that the issue of the constitutionality of personal jurisdiction over the state has been decided adversely by this Court in <u>Price I</u>;  to preserve the issue for potential further review, the matter is respectfully raised once again in this instant case as the holding in <u>Price I</u> may now  be in question due to the language in <u>Republic of Austria v. Altman</u>, 541 U.S. 677, 713 (2004) ,  which held:

> For one thing, statutes of limitations, **personal jurisdiction** and venue requirements, and the doctrine of *forum non conveniens* will limit the number of suits brought in American Courts.

<u>Id</u>. (emphasis added).


V.    **THE EXERCISE OF PERSONAL JURISDICTION OVER INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY VIOLATES THE DUE PROCESS CLAUSE <u>OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION</u>**

The Congress of the United States is a legislature of enumerated and specific powers, and can only act in accordance with the limitations imposed by the Constitution. <u>Marbury v. Madison</u>, 1 Cranch 137, 5 U.S. 137, 176, 2 L.Ed. 60 (1803).  When Congress is required to establish some procedure concerning the deprivations of life, liberty or property, the scope of permissible procedures is limited by specific constitutional guarantees.  The civil trial process is regulated by constitutional guarantees of due process restrictions on courts jurisdiction. (*Ibid.*)

A nonresident defendant is constitutionally amenable to a forum's personal jurisdiction if it possesses (1) sufficient minimum contacts with the forum to satisfy due process requirements, and (2) if the forum's exercise of jurisdiction comports with "traditional notions of fair play and

substantial justice." International Shoe Co. 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  This two-part test embodies the controlling due process principle that a defendant must have "fair warning" that a particular activity may subject it to the jurisdiction of a foreign court.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

To meet constitutionally mandated minimum contacts, the defendant's contacts with the forum must satisfy three criteria:

First, the contacts must be related to the plaintiffs' cause of action or have given rise to it. Burger King, supra, 471 U.S. at 472.  Second, the contacts must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . ., thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Third, the defendant's contacts with the forum must be "such that [the defendant] should reasonably anticipate being haled into court there."  World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

It is clear that the United States nationality of the plaintiffs in this case do not furnish the requisite nexus with the United States so as to permit the maintenance of this in personam action over the individual defendants.  In Callejo v. Bancomer, S.A., 764 F.2d 1101, 1111 (5th Cir. 1985), the Circuit Court observed that jurisdictional contacts with the United States were purely fortuitous "where they depended solely on the fact that the injured person happened to be American."  See also, Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccio De Costa Rica, 614 F.2d 1247, 1253-55 (9th Cir. 1980) ("minimum contacts" standard not satisfied when the only link to the United States is plaintiff's nationality).

Although the FSIA (in conjunction with 28 U.S.C. § 1330(b)) establishes personal

jurisdiction over a state, it does not independently establish personal jurisdiction over an individual. <u>I.T. Consultants, Inc. v. Republic of Pakistan</u>, 351 F.3d 1184, 1191 (D.C. Cir. 2003); <u>Price I</u>, 294 F.3d at 96.

 The recent decision in <u>Price II</u>, 294 F.3d at 99-100 expressed no view on the entitlement to due process of "other entities" and, in relevant part, stated:

> In sum, we hold that the Fifth Amendment poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in the federal courts. Our decision on this point reaches only an actual foreign government; we express <u>no view</u> as to whether other entities that fall within the FSIA's definition of "foreign state" including corporations in which a foreign state owns a majority interest, see 28 U.S.C. 1603(b) - - could yet be considered persons under the Due Process Clause. (Emphasis added).

<u>Id</u>. Thus, the decision in <u>Price</u>, even though deciding that a foreign state may not benefit from due process protections under the Fifth Amendment of the Constitution, does not decide the issue of whether an individual is entitled to due process protections. <u>Price</u> also, in comparing due process to a foreign individual's right of access to United States Court's held that "Private individuals have a constitutional right of access to courts". <u>Id</u>. at 97. The Court went on to hold that under the Due Process Clause the "personal jurisdiction requirement is not a structural limitation on the power of courts. Rather, the personal jurisdiction requirement recognizes and protects an <u>individual</u> liberty interest. It represents a restriction on judicial power not a matter of sovereignty, but as a matter of individual liberty." (Emphasis added, internal quotes omitted). <u>Id</u>. at 98. The "core concept of due process is to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice." <u>Id</u>. (Internal quotations and citations omitted).

The core of minimum contacts theory is that personal jurisdiction is limited by the Due Process Clause. As <u>Price</u> did not directly decide the issue of foreign individuals issue, the individual defendants submit that they are protected by the Fifth Amendment's due process protections.

This Circuit has consistently held that the requirements of the FSIA for personal jurisdiction do not affect the constitutional *in personam jurisdiction* requirements of the Due Process Clause of the Fifth Amendment <u>Foremost-McKesson</u>, 905 F.2d at 442 n. 10.

More recently our Circuit has held that the district court "may exercise personal jurisdiction over defendant, consistent with due process, only if there are 'minimum contacts' between defendant and forum such that maintenance of suit does not offend traditional notions of fair play and substantial justice". <u>Junquist v. Nahyan</u>, 115 F.3d 1020, 1030 (D.C. Cir. 1997). The Court further held that "While defendant's absence of physical contact with forum will not defeat personal jurisdiction there, defendant's conduct and connection with forum must be such that he should reasonably anticipate being haled into court there for exercise of jurisdiction to satisfy due process". *Id.* at 1031. *Also see*, <u>Maritime Intern. Nominees Establishment v. Republic of Guinea</u>, 693 F.2d 1094, 1105 n. 18 (D.C. Cir. 1982)("A finding of FSIA personal jurisdiction, which would rest in part on a finding of non-immunity, must comport with the demands of due process, and Congress intended that the Act satisfy those demands"); <u>Gilson v. Republic of Ireland</u>, 682 F.2d 1022, 1028 (D.C. Cir. 1982) ("a statue cannot grant personal jurisdiction where the Constitution forbids it").

The Second Circuit in <u>U.S. Titan, v. Inc. Guangzhou Zhen Hua Shipping Co., Ltd.</u>, 241 F.3d 135, 152 (2nd Cir. 2001) held that "In general subject matter jurisdiction plus service of

14

process equals personal jurisdiction under the FSIA. . . . [h]owever, the exercise of personal jurisdiction . . . must also comport with the Due Process Clause, which permits a forum to exercise personal jurisdiction over a non-resident defendant who has 'certain minimum contacts [with the forum] . .  such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *See also* Reis v. Societe Centrale Du Grupe Des Assurances Nationales, 235 F.3d 738, 746 (2nd Cir. 2000) (Constrained only by constitutional due process considerations, personal jurisdiction under the FSIA equals subject matter jurisdiction plus valid service of process).

Simply put, the FSIA and its amendments may not "create personal jurisdiction where the Constitution forbids it." Texas Trading & Milling Corp. v. Federal Republic of Nigeria, 647 F.2d 300, 308 (2d Cir. 1981). *See also* Ungar v. Palestinian Authority, 153 F.Supp.2d 76, 91-95 (D.R.I. 2001) (holding in an action under 18 U.S.C. § 2333 that personal jurisdiction was lacking over individual defendants who were senior officials of the Palestinian Authority and the PLO for lack of minimum contacts with the United States).

The Court should dismiss the complaint against the seven individual defendants as it lacks *in personam* jurisdiction over the individual defendants in their official capacity

## VI.    FAILURE TO STATE A CAUSE OF ACTION

A.    *Flatow Act Does Not Create*
      *A Private Cause of Action Against Libya*

This District of Columbia Circuit Court, in <u>Cicippio-Puleo v. Islamic Republic of Iran</u>,

353 F.3d 1024, 1033 (D.C. Cir. 2004) conclusively held that the Flatow Act and the 1996

Amendment to the FSIA (§ 1605(a)(7)) did not create a private cause of action against a foreign

government. The Court, in relevant part, held:

> We now hold that neither 28 U.S.C. § 1605(a)(7) nor the Flatow
> Amendment, nor the two considered in tandem, creates a private right
> of action against a foreign government. Section 1605(a)(7) merely
> waives the immunity of a foreign state without creating a cause of
> action against it, and the Flatow Amendment only provides a private
> right of action against officials, employees, and agents of a foreign
> state, not against the foreign state itself.

*Id.*  It should also be noted that Cicippio also specifically abrogates a number of district court

decisions.  <u>Cicippio</u>, in relevant part, held:

> . . . . some district court opinions in this circuit have held or assumed
> that the Flatow Amendment creates a cause of action against foreign
> states. *See Cronin v. Islamic Republic of Iran*, 238 F. Supp. 2d 222,
> 231 (D.D.C. 2002) (holding that the Flatow Amendment provides a
> cause of action against a foreign state). *See also Regier v. Islamic*
> *Republic of Iran*, 281 F. Supp. 2d 87, 98-99 (D.D.C. 2003) (adopting
> *Cronin*'s reasoning that there is a cause of action against foreign
> states under the Flatow Amendment); *Kilburn v. Islamic Republic of*
> *Iran*, 277 F. Supp. 2d 24, 36-37 (D.D.C. 2003) (same).

*Id*. <u>Cicippio</u> also further held:

> Subsequent enactments by Congress providing for the payment or
> enforcement of judgments entered against foreign states in cases
> brought under § 1605(a)(7) fail to establish that Congress created a
> cause of action against foreign states. *See* Victims of Trafficking and
> Violence Protection Act of 2000, Pub.L. No. 106-386, § 2002, 114
> Stat. 1464, 1541-43; Terrorism Risk Insurance Act of 2002, Pub.L.
> No. 107-297, § 201, 116 Stat. 2322, 2337-39. As we explained in

> *Roeder,* these statutes merely provide for payment "*if* an individual has a judgment against Iran," but they do not address or resolve the anterior question "whether plaintiffs are legally entitled to such a judgment." 333 F.3d at 239 (emphasis added). It is entirely plausible for Congress to direct the United States to compensate victims of terrorism without purporting to establish or support a cause of action against foreign state sponsors of terrorism.

*Id.* at 1035.

The language of the Flatow Act is also clear in that it only creates a cause of action against "An official, employee, or agent of a foreign state . . . while acting within the scope of his or her office, employment, or agency ". 28 U.S.C. § 1605(a)(7) note. The act is clearly limited to individuals in their individual capacity. This position has also been confirm by the D.C. Circuit. The Court in Cicippio limited the causes of action which are created by the Flatow Act. The Court held:

> We also agree with the United States that, insofar as the Flatow Amendment creates a private right of action against officials, employees, and agents of foreign states, the cause of action is limited to claims against those officials in their *individual,* as opposed to their official, capacities.

*Id.*, at 1034.

The D.C. Circuit has also further stated, "it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states." *Id.*, at 1036. In situations where "Congress has not expressly recognized" a cause of action against foreign states, courts should "decline to imply" one. *Id.* Accordingly, the Flatow Act does not create a private federal cause of action against Libya or the Libyan External Security Organization, Muammar Qadhafi and Abdullah Senoussi (in their official capacities).

17

B.      *Generic Common Law Claims Do Not Create*
        <u>*A Private Cause of Action Against Libya*</u>

Simply reciting generic common law causes of action in the complaint is unquestionably

insufficience.

The Court of Appeals, in <u>Acree v. Republic of Iraq</u>, 370 F.3d 41, 59 (D.C. Cir. 2004)

specifically held that generic common law cannot be the source of a federal cause of action. The

Court, in relevant part, held:

> [G]eneric common law cannot be the *source* of a federal cause of
> action. The shared common law of the states may afford useful
> guidance as to the rules of decision in a FSIA case where a cause of
> action arises from some specific and concrete source of law. *See*
> *Bettis*, 315 F.3d at 333 (assuming, *arguendo,* that plaintiffs stated a
> cause of action under the Flatow Amendment and then turning to
> generic common law to flesh out the controlling substantive law). But
> there is no support for the proposition that generic common law itself
> may furnish the cause of action. Rather, as in any case, a plaintiff
> proceeding under the FSIA must identify a particular cause of action
> arising out of a specific source of law. (Emphasis added).

In <u>Bettis v. Islamic Republic of Iran</u>, 315 F.3d 325, 332 (D.C. Cir. 2003) the Court of

Appeals also held that most Flatow Amendment cases have applied federal common law but then

goes on to hold that the term is incorrect.  <u>Bettis</u>, in relevant part, held:

> [F]ederal common law' seems . . . to be a misnomer. Indeed, it is a
> mistake, we think, to label actions under the FSIA and the Flatow
> Amendment cases arising under the FSIA . . . . as 'federal common
> law cases as these actions are based on *statutory* rights. Without the
> statute, the claims could not arise.

*Id.* at 332. (Emphasis added). Plaintiffs assert vague causes of action pursuant to the generic

"applicable federal, state, foreign statutory and/or common law" without ever identifying with

specificity the source of that cause of action.  The holding in Bettis has already decided that

18

plaintiffs may not rely on federal common law to assert causes of action against Libya.[3]  The

Court should dismiss plaintiffs causes of action for failure to state a claim upon which relief can

be granted.


C.      _Failure to Adequately Plead State Law Causes of Action_

        Plaintiffs' reliance on the generic "applicable federal, state, foreign statutory and/or

common law" without ever identifying a particular state as the basis for their causes of action

also mandates dismissal for failure to state a claim upon which relief can be granted.  The issue

has received extensive and exhaustive review by sister district courts and can be best

summarized  by the Memorandum Opinion of the Honorable Judge Henry H. Kennedy, Jr.,

United States District Judge for the District of Columbia in the matter of Pugh v. Socialist

People's Libyan Arab Jamahiriya, Civil Case No. 02-2026 (May 12, 2006).  The Memorandum

Opinion, in dealing with an almost identical assertion by the plaintiffs in that case, in relevant

part, held:

---

[3] The issue of whether state common law is available to claimants as a private cause of
action in a federal action against foreign states has not specifically been decided by this Circuit.
Although it is true that in Cicippio-Puleo the Court allowed the case to be remanded to the lower
court, the Court also held:

> In remanding, we do not mean to suggest, one way or the other,
> whether plaintiffs have a viable cause of action. The possibility that
> an alternative source of law might support such a claim was
> addressed only by _amici_, and we do not ordinarily decide issues not
> raised by the parties. Accordingly, we will leave it to the District
> Court in the first instance to address any amended complaint that is
> offered by plaintiffs. Accordingly, we will leave it to the District
> Court in the first instance to address any amended complaint that is
> offered by plaintiffs.

While plaintiffs may properly state a claim against defendants under state law, the court nonetheless denies plaintiffs' motion for partial summary judgment. Plaintiffs' motion seeks partial summary judgment as to liability alone. As plaintiffs note, "the starting point for such an analysis is the District of Columbia's choice of law principles." However, plaintiffs argue that the court "need not, in the first instance, engage in a state-by-state analysis of the various causes of action, as asserted by each plaintiff" because the claims asserted—wrongful death and intentional infliction of emotional distress—are "fairly uniform in every state." Rather, plaintiffs argue that "[i]t is enough at this stage for the Court to conclude—as it must—that the undisputed material facts establish the Defendants' liability."

Essentially, plaintiffs ask the court to ignore the choice-of-law analysis necessary to determine which state's law applies and hold that defendants would be liable under *every* state's law. The court declines this invitation, as it was foreclosed by the D.C. Circuit's opinion in *Acree*. In *Acree,* the D.C. Circuit rejected the plaintiffs' claims that the "traditional torts of assault, battery and intentional infliction of emotional distress in their generic form" were sufficient to impose liability on defendants. 370 F.3d at 59. Rather, the court required plaintiffs to "identify a particular cause of action arising under a specific source of law." *Id.* Plaintiffs failed to do so in their submissions to the court.

Moreover, the D.C. Circuit, in *Cicippio-Puleo* and *Acree*, suggested that a plaintiff cannot rely on their submissions to identify that "particular cause of action," but rather must do so *in their complaint*. In *Cicippio-Puleo*, the D.C. Circuit, after rejecting the plaintiffs' use of the Flatow Amendment as a cause of action against the foreign state, remanded the case "to allow plaintiffs an opportunity to *amend their complaint* to state a cause of action under some other source of law," including state law. 353 F.3d at 1027 (emphasis added). Several months later, the D.C. Circuit reviewed a complaint in a similar case that, like plaintiffs here, asserted tort claims "in their generic form." *Acree*, 370 F.3d at 59. At oral argument, the court pressed the plaintiffs to identify the source of law upon which their claims were based. Counsel reiterated their reliance on "generic common law torts." *Id.* Having failed to identify a particular cause of action, the D.C. Circuit dismissed the case, stating that it found "no cause to remand this case to the District Court in order to allow appellees to *amend their complaint* to state a cause of action under some other source of law." *Id.* at 59–60 (emphasis added).

Based on these cases, some district courts in this

20

jurisdiction have held that a plaintiff in a FSIA case is required to identify, in their complaint, their state law claims with particularity. *See Dammarell*, 2005 U.S. Dist. LEXIS 5343, at *4–5; *Welch v. Islamic Republic of Iran*, 2004 U.S. Dist. LEXIS 19512, at *13–16 (D.D.C. Sept. 27, 2004). These cases have allowed the plaintiffs to amend their complaint to accomplish such a result. Here, plaintiffs' complaint alleges nothing more than the "generic common law torts" of wrongful death and intentional infliction of emotional distress. Based on the language in *Acree* and Cicippio-Puleo that suggests that a FSIA complaint must allege more in order to survive a motion to dismiss, the court concludes that plaintiffs must amend their complaint if they wish to proceed.

<u>Id</u>. at 28-30.  (Internal citation to plaintiffs' brief omitted).  The above referenced opinion by Judge Kennedy is well reasoned and follows binding precedent on an identical issue from the District of Columbia Court of Appeals. Plaintiffs also fail to even hint or identify any foreign law which they may intend to rely upon.

The Court should dismiss plaintiffs causes of action for failure to state a claim upon which relief can be granted.

21

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Libya's motion under Rule 12(b)(1) and (2), F. R. Civ. P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F.R.Civ.P., and dismiss the complaint for failure to state claims upon which relief can be granted. A proposed order is attached hereto.


Dated:          October 18, 2006                    Respectfully submitted,




                                        ___//s//_____
                                        Arman Dabiri
                                        Law Offices of Arman Dabiri
                                                & Associates, P.L.L.C.
                                        1725 I Street, N.W.
                                        Suite 300
                                        Washington, D.C. 20006
                                        Tel. (202) 349-3893
                                        E-mail: armandab@worldnet.att.net

                                        *Counsel for Libyan Government Defendants*