**-IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

MANJULA PATEL, *ET AL.*, )
)
Plaintiff, )
) Civil Case No: 06-626 (PLF)
)
THE SOCIALIST PEOPLE'S LIBYAN )
ARAB JAMAHIRIYA, *ET AL.*, )
)
Defendants. )

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS**

Defendants (hereafter "Libya") replies to plaintiffs' (hereafter "Patel") opposition to Libya's motion to dismiss for lack of subject-matter jurisdiction, Constitutional personal jurisdiction, and in the alternative for failure to state a claim on which relief can be granted.

**I. LIBYA'S REMOVAL FROM STATE DEPARTMENT LIST**

Patel's opposition commences by the assertion that Libya's removal from the State Department' list of state sponsors of terrorism has no effect upon the issue of the Court's subject-matter jurisdiction. In support Patel cites (and encloses in Attachment 1) the Order of October 19, 2006 in the matter of Kilburn v. Islamic Republic of Iran, Docket No. 06-7127.

The Order of the Circuit Court in Kilburn is, however, distinguishable from the instant case. In Kilburn the District Court had been, prior to Libya's removal from the State Department's list, vested with subject-matter jurisdiction. In the instant case, the Court has yet to decide the issue of its own competence while Libya's sovereign immunity has already been restored. Consequently the Order of the Circuit Court in Kilburn is distinguishable and inapplicable in the instant case.

Libya respectfully refers the Court to its opening motion for the binding precedent

established by the Supreme Court regarding the issue of removal of the Court's subject-matter jurisdiction under the terrorism exception to the FSIA.

## II. FACTUAL ALLEGATIONS FALSE

Patel's opposition tries in vain to change the clear standard that has been set in this Circuit for the standard of review by the Court in examining the factual allegations which may establish the Court's subject-matter jurisdiction pursuant to the terrorism exception codified under 28 U.S.C. § 1605(a)(7).

This Circuit has established that if a defendant challenges the factual basis of the Court's subject-matter jurisdiction, the Court may not assume the truth of the facts asserted by the plaintiffs. Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F3d 1123, 1127 (D.C. Cir. 2004).

Libya's motion to dismiss has challenged the patently false allegations of Patel's amended complaint. Patel opposition, however, fails to provide the full documents on which it relies and refers to throughout its amended complaint. Simply referring to government documents to satisfy the pleading requirements to stip a foreign sovereign state of immunity, particularly in light of recent admissions by United States intelligence agencies regarding flawed intelligence, will not do. The Court should decline to establish a new unprecedented standard as encouraged by Patel. As Patel has refused to supplement its factual allegations which allegedly vest the Court with subject-matter jurisdiction, the Court should dismiss the complaint.

## III. PLAINTIFFS' FAIL TO ASSERT A CAUSE OF ACTION

Patel commences its opposition by asserting that "Libya does not even dispute the application of the federal statutory causes of action available under the TVPA". (Plt. Opp. at 3).

Although Patel's amended complaint contains a head note containing the caption "Torture Victim Protection Act" the complaint does not assert a cause of action against Libya or the individual defendants in their official capacity under the TVPA. (Plt. Opp. at 146-147).

Patel's amended complaint refers to the TVPA only to define the meaning of torture. (Plt. Opp. at 147, ¶ 448).

> As a direct and proximate result of the willful, wrongful, intentional and reckless acts of Defendants, all passengers and crew on board Pan Am Flight 73 at the time of the hijacking were tortured within the meaning of the TVPA, 28 U.S.C. § 1350 note.

*Id*. Contrary to Patel's assertion that it has asserted a cause of action pursuant to the TVPA, paragraph 451 of the amended complaint only asserts causes of action under generic terminology without any reference to the TVPA.

> Under applicable federal, state, foreign statutory and/or common law, certain Plaintiffs also may assert a cause of action for wrongful death against Defendants in connection with the willful, wrongful, intentional and reckless acts of the ANO Defendants acting at the direction and with the support of the Libyan Defendants.

(Plt. Opp. at 147, ¶ 451).

It is clear that Patel has only used the TVPA to define the meaning of torture in it amended complaint. Patel's opposition, however, now attempts to retroactively assert the TVPA as a cause of action. Patel's reliance on the TVPA as a cause of action against Libya and the individual defendants in their official capacity is misplaced and should be dismissed by the

Court.

Torture Victim Protection Act of 1991, reproduced as a note to 28 U.S.C. § 1350, in relevant part, reads as follows:

> **Section 1. Short Title.**
> This Act may be cited as the "torture Victim Protection Act of 1991".
> **Sec. 2. Establishment of Civil Action.**
> **(a) Liability.–** An individual who, under actual or apparent authority, or color of law, of any foreign nation –
> **(1)** subjects an individual to torture shall, in a civil action, be liable for damages to that individual; or
> **(2)** subjects and individual to extrajudicial killing shall, in a civil action, be liable for damages to the individuals legal representative, or to any person who r
>
> **(b) Exhaustion of remedies.–** A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred.
>
> **(c) Statute of limitations.–** No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose.

28 U.S.C. § 1350, note.

The issue of whether the TVPA can be asserted as a cause of action has received extensive review and has been answered in the negative. A sister Court in Pugh v. Socialist People's Libyan Arab Jamahiriya, 2006 WL 2384915 at 11 (D.D.C. May 11, 2006) held,

> The court also rejects plaintiffs' assertion that section 1606 of FSIA may also be used to expand the terms of the TVPA. As with the Flatow Amendment, the terms of the TVPA make clear that its applicability is limited to suits against individuals, not foreign states. *See* 28 U.S.C. § 1350 note. Moreover, the legislative history of the TVPA demonstrates that Congress did not intend for it to be used to hold foreign states and their instrumentalities liable. First, the Senate Report states unequivocally that the legislation's use of the term

> "individual" was intentional and was meant "to make crystal clear that foreign states or their entities cannot be sued under this bill *under any circumstances;* only individuals may be sued." S.Rep. No. 102-249, at 7 (1991) (emphasis added). The House Report contains language of similar effect. H.R.Rep. No. 102-367, at 87 (1992) ("Only 'individuals,' not foreign states, can be sued under the [TVPA].").

*Id*. The Court should dismiss Patel's belated attempt to assert a cause of action under the TVPA in its opposition. Patel's assertion that Libya concedes causes of action under the TVPA is without merit and explicitly rejected. Patel's poorly drafted amended complaint only uses the TVPA in a heading without actually asserting it as a cause of action.

The Court should further dismiss Patel's TVPA claim as the TVPA cannot be used to assert a cause of action against Libya or the individual defendants in their official capacity.[1]

Libya will not repeat its entire Rule 12(b)(6) argument relating to common law and specific state statutory law pleading requirements (which Patel now asserts for the first time in its opposition with particularity) and respectfully refers the Court to its opening brief.[2]

---

[1] It also clear that Patel has failed to attempt to exhaust any remedies that may be available in Pakistan. Furthermore, the TVPA has a built in 10 year statute of limitation which clearly expired long ago.

[2] Amendment of a complaint by way of pleadings has been previously rejected both by the Circuit Court and sister district courts. In Pugh, Judge Kennedy held:

> Based on these cases, some district courts in this jurisdiction have held that a plaintiff in a FSIA case is required to identify, in their complaint, their state law claims with particularity. *See Dammarell,* 2005 U.S. Dist. LEXIS 5343, at *4-5; *Welch v. Islamic Republic of Iran,* 2004 U.S. Dist. LEXIS 19512, at *13-16 (D.D.C. Sept. 27, 2004). These cases have allowed the plaintiffs to amend their complaint to accomplish such a result. Here, plaintiffs' complaint alleges nothing more than the "generic common law torts" of wrongful death and intentional infliction of emotional distress. Based on the language in *Acree* and *Cicippio-Puleo* that suggests that a FSIA complaint must allege more in order to survive a motion to

## IV. 28 U.S.C. § 1606 DOES NOT CREATE NEW CAUSES OF ACTION

Patel's introduction also commences with the erroneous, and now uniformly rejected, proposition that the Court, by virtue of 28 U.S.C. § 1606, "one need determine only whether a cause of action would be available against a private individual in like circumstances. If it would, then the foreign state 'shall be liable; in the same manner and the same extent." (Plt. Opp. at 9).

Patel then asserts, despite binding precedent to the contrary, that it may rely on common law and all statutory law.

Rather than belabor the point, Libya cites, in relevant part, the well reasoned and correct analysis of Judge Kennedy (reconfirming the decision of two other sister courts in this Circuit) in Pugh:

> Plaintiffs' theory of liability is that Libya and LESO should be held liable under the Flatow Amendment and the TVPA because both statutes "set forth a cause of action and specific damage remedies against private individuals." Pls.' Mot. at 22-23. Therefore, plaintiffs argue, " § 1606 instructs, and indeed requires, that such rights of action and remedies likewise be available against the non-immune foreign state." *Id.* This court disagrees.
>
> To reiterate, the Flatow Amendment creates a specific cause of action against an "official, employee, or agent of a foreign state" for acts over which the court may maintain jurisdiction under the state-sponsored terrorism exception to sovereign immunity. 28 U.S.C. § 1605 note. Two judges in this jurisdiction have explicitly held that the Flatow Amendment should not be expanded to apply to foreign states through application of section 1606. The first, and most extensive, discussion of this issue was provided by Judge Bates in *Dammarell v. Islamic Republic of Iran.* Judge Bates presented four

---

> dismiss, the court concludes that plaintiffs must amend their complaint if they wish to proceed.

Pugh at 15.

> reasons why "the cause of action in the Flatow Amendment cannot be read to apply to foreign states through section 1606": (1) the text of the Flatow Amendment applies only to officials, employees, or agents of a foreign state, not a foreign state itself; (2) the legislative history does not contain any indication that Congress nonetheless intended to create a private cause of action against a foreign state; (3) the statute does not "obviously extend to *private individuals* within the meaning of section 1606," 2005 U.S. Dist. LEXIS 5343, at *97-98 (emphasis added); and (4) such a holding would be "in at least some tension with *Cicippio-Puleo," id.* at 97. Last October, Judge Kollar-Kotelly adopted the rationale laid out by Judge Bates in *Dammarell* and similarly rejected the argument that the Flatow Amendment can be read to apply to foreign states through section 1606. *Holland*, 2005 U.S. Dist. LEXIS 40254, at *41-44.
>
> The court agrees with the reasoned decisions of Judge Bates and Judge Kollar-Kotelly and likewise concludes that Congress did not intend to create a cause of action under the Flatow Amendment against foreign states (or its instrumentalities or agents acting in their official capacities) through section 1606 of FSIA. As the D.C. Circuit has stated, "it is for Congress, not the courts, to decide whether a cause of action should lie against foreign states." *Cicippio-Puleo*, 353 F.3d at 1036. In situations where "Congress has not expressly recognized" a cause of action against foreign states, courts should "decline to imply" one.

Pugh, at 10-11. (Internal footnotes omitted). The Court should follow the well reasoned analysis of its three sister district courts in this Circuit.

## V. COURT LACKS PERSONAL JURISDICTION OVER INDIVIDUALS

Libya is forced to reiterate its position from its motion to dismiss. The United States nationality of the decedents and the claimants does not furnish the requisite nexus with the United States so as to permit the maintenance of this *in personam* action over the individual defendants. In Callejo v. Bancomer, S.A., 764 F.2d 1101, 1111 (5th Cir. 1985), the Circuit Court observed that jurisdictional contacts with the United States were purely fortuitous "where

they depended solely on the fact that the injured person happened to be American." *See also*, Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccio De Costa Rica, 614 F.2d 1247, 1253-55 (9th Cir. 1980) ("minimum contacts" standard not satisfied when the only link to the United States is plaintiff's nationality).

Although the FSIA (in conjunction with 28 U.S.C. § 1330(b)) establishes personal jurisdiction over a sovereign state, it does not independently establish personal jurisdiction over an individual. I.T. Consultants, Inc. v. Republic of Pakistan, 351 F.3d 1184, 1191 (D.C. Cir. 2003). This Circuit has also specifically established, contrary to the position asserted by Patel, that personal jurisdiction over a foreign state does not automatically equal personal jurisdiction over an individual - whether in official capacity or personal. Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 83, 92-93 (D.C. Cir. 2002) expressed no view on the entitlement to due process of "other entities" and, in relevant part, stated:

> In sum, we hold that the Fifth Amendment poses no obstacle to the decision of the United States government to subject Libya to personal jurisdiction in the federal courts. Our decision on this point reaches only an actual foreign government; we express no view as to whether other entities that fall within the FSIA's definition of "foreign state" including corporations in which a foreign state owns a majority interest, see 28 U.S.C. 1603(b) - - could yet be considered persons under the Due Process Clause. (Emphasis added).

Patel, without citing any case, asserts that the "fact that Plaintiffs include United States nationals *is* sufficient to confer personal jurisdiction over Defendants Qadhafi and Senoussi. The individual Libyan Defendants are 'agents' of Libya for purposes of the Flatow Amendment, which provides an express federal cause of action against both of them. § 1605 note. Therefore, it is clear that Defendants Qadhafi and Senoussi, 'official' agents of a foreign sovereign (Libya), are subject to this court's jurisdiction pursuant to the FSIA and Flatow Amendment." (Plt. Opp.

at 19-20, footnote 11).

The logic contained in Patel's footnote is tortured and without merit on every possible level.

First, the Flatow Amendment does not provide a cause of action against the individual defendants in their "official capacity". Patel's assertion that the Court may exercise personal jurisdiction over the individual defendants is based on the decidedly erroneous position that the Flatow Amendment provides a cause of action against individuals in their official capacity. This nonsensical assertion can easily be dispelled by a simple review of the binding language of Cicippio-Puleo v. Islamic Republic of Iran, 353 F.3d 1024, 1033 (D.C. Cir. 2004), which held:

> We also agree with the United States that, insofar as the Flatow Amendment creates a private right of action against officials, employees, and agents of foreign states, the cause of action is limited to claims against those officials in their *individual*, as opposed to their official, capacities:
>
>> As the Supreme Court repeatedly has explained, an *official*-capacity claim against a government official is in substance a claim against the government itself. See, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).... By definition, a damages judgment in an official- capacity suit is enforceable against the state itself (and only against the state). See *Graham*, 473 U.S. at 166, 105 S.Ct. 3099 ...; see also Fed.R.Civ.P. 25(d).... Thus, to construe the Flatow Amendment as permitting official-capacity claims would eviscerate the recognized distinction between suits against governments and suits against individual government officials.... [T]he text of the Flatow Amendment and Section 1605(a)(7), as well as all relevant background interpretive principles ... foreclose any such construction.

*Id*. Patel's assertion is contrary to precedent and is not an exercise in serious thought and should be dismissed.

Patel uses the same approach in arguing that the Court may exercise personal jurisdiction

over individual defendants who lack any contacts with the United States. Patel cites a string of criminal statutes for the preposition that they establish personal jurisdiction over the individual defendants in their official capacity. It is unclear how inapplicable criminal laws will establish personal jurisdiction over individual defendants in their official capacities in a civil action. The Court should simply ignore Patel's regurgitation of criminal statutes and dismiss the case against the individual defendants in their official capacity. The cited criminal statues are inapplicable and are not jurisdictional.

Libya will not repeat its entire argument relating to the issue of persona jurisdiction and respectfully refers the Court to its opening motion.

## VI. HEAD OF STATE IMMUNITY

Patel asserts that head of state immunity is "available if, *and if only if*, the United States government assets the immunity by filing a 'suggestion of immunity' on behalf of the foreign official. (Plt. Opp. at 42). It is unclear whether Patel's unsupported statement is meant to indicate that the Court is without power to request the position of the United States government as the Court's in Collett v. Socialist People's Libyan Arab Jamahiriya, 362 F.Supp.2d 230, 237 (D.D.C. 2005) and Pugh v. Socialist People's Libyan Arab Jamahiriya, Civil Case No. 02-2206 (HHK) have done. If so, such a position is unsupported by any case.

Patel's position that the Court should make a determination without first awaiting the position of the United States regarding Qadhafi's head-of-state immunity, and then possibly reverse itself (if the government suggests head-of-state immunity and the Court is without subject-matter jurisdiction) is absurd and unsupported by any precedent. Patel concedes that at

least two other Court's within this Circuit are currently awaiting the United State's position on the issue. Patel's argument is without any serious legal merit and the Court should decline to follow the inefficient and unprecedented method of deciding the issue as suggested by Patel.

**CONCLUSION**

For the foregoing reasons, the Court should grant Libya's motion under Rule 12(b)(1) and (2), F. R. Civ. P., and dismiss this action for lack of subject-matter and constitutional personal jurisdiction over the defendants and, in the alternative, grant Libya's motion under Rule 12(b)(6), F.R.Civ.P., and dismiss the complaint for failure to state claims upon which relief can be granted. A proposed order is attached hereto.

Dated: November 6, 2006 Respectfully submitted,

//s//

Arman Dabiri
Law Offices of Arman Dabiri
& Associates, P.L.L.C.
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
Tel. (202) 349-3893
E-mail: armandab@worldnet.att.net

*Counsel for Libyan Government Defendants*