IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANJULA PATEL, *ET AL.*, ) | |
| ) | |
|         Plaintiff, ) | |
| ) | Civil Case No: 06-626 (PLF) |
| ) | |
| THE SOCIALIST PEOPLE'S LIBYAN ) | |
| ARAB JAMAHIRIYA, *ET AL.*, ) | |
| ) | |
|         Defendants. ) | |

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

      Defendants (hereafter "Libya") replies to plaintiffs' opposition to Libya's motion for summary judgment.

**I.    Allegations Against Libya Known Since 1987 According to Complaint**

      Plaintiffs commence their opposition by asserting, contrary to their own Amended Complaint and previously filed Opposition to Libya's Motion to Dismiss, that allegations of Libyan involvement in the hijacking of Pan Am Flight 73 were not known until March of 2004. (Opp. at 2). In further support of this contradictory assertion, Plaintiffs' have attached the declarations of Jay Grantier (Exhibit A) and Prabhar Krishnaswamy (Exhibit B) for the proposition that the allegations against Libya were not known until March of 2004. The allegations against Libya, purportedly only came to light based on the allegations of a reporter (without any evidence) from The Sunday Times of London. (Opp. at 2). However, the two declarations are in stark contrast to plaintiffs' amended complaint which highlights the following allegations against Libya which are derived from reports all predating the 2004 newspaper report of The Sunday Times:

      1.    Plaintiffs allege that Qadhafi ordered the Libyan External Security Organization

("LESO") to carry out retaliatory attacks against the United States after the 1986 air strikes against Libya and provided material support and resources for the Abu Nidal Organization ("ANO") for the hijacking of Pan Am Flight 103.  Plaintiffs base this allegation on Directorate of Intelligence, Terrorism Review at 11, 19 (April 9, 1987).  This report is 17 years older then The Sunday Times report and 19 years prior to the date of plaintiffs' filing of their complaint.  (Amend. Comp. at ¶¶ 215, 217).

Plaintiffs also cite, in support of their allegations, the following:

- Directorate of Intelligence, Terrorism Review at 9 (March 10, 1988); and

- Defense Science Board 1997 Summer Study Task Force, DOD Responses to Transnational Threats, Volume I - Final Report 15 (Oct. 1997); and

- Defense Science Board 1997 Summer Study Task Force, DOD Responses to Transnational Threats, Volume III - Supporting Reports (Feb. 1998); and

- United States Dept. of State Fact Sheet: Libya's Qadhafi Continues Support for Terrorism at 9 (Jan. 1989).[1]  Id.

2.   Plaintiffs allege that the individual defendants in this case have strong ties to Libya - in support of this allegation they cite the United States Dept. of State Fact Sheet: Libya's Qadhafi Continues Support for Terrorism at 17 (Jan. 1989).  This report by the State Department is 15 years older than The Sunday Times article. (Amend. Comp. ¶ 220).

---

[1] Libya explicitly denies all allegations of involvement with the hijacking of Pan Am Flight 73 or allegations of support for the ANO.  The above reports are only cited to demonstrate plaintiffs' contradictory assertion that they were unaware of allegations against Libya until 2004.

3.  Plaintiffs further allege that base "on its intelligence and investigation, the United States Government determined that Libya, through ANO, ordered and carried our the hijacking and terrorist attack on Pan Am Flight 73". (Amend. Comp. ¶ 221). In support of this allegation plaintiffs cite the following:

- Defense Science Board 1997 Summer Study Task Force, <u>DOD Response to Transnational Threats</u>, Volume I - Final Report 1997 (six years older then <u>The Sunday Times</u> article) - this report supposedly supports plaintiffs' allegation that due to the 1986 United States strike, Libya retaliated by "hijacking of Pan Am Flight 73 'by Abu Nidal working for Libya'"; and

- United States Dept. of State, <u>Patterns of Global Terrorism: 1986</u> at 13 (Jan. 1988) (six years older than <u>The Sunday Times</u> report) - this report supposedly supports plaintiffs' allegation that "Libya was directly involved with the hijacking of Pan Am Flight 73 out of Karachi; and

- United States Dept. of State Fact Sheet: <u>Libya's Qadhafi Continues Support for Terrorism</u> (Ja.n. 1989) - plaintiffs rely on this report for the allegation that the ANO terrorists on board Pan Am Flight 73 had strong connections to Libya; and

- Defense Science Board 1997 summer Study Task Force, <u>DOD Responses to Transnational Threats</u>, Volume III - Supporting Reports (Feb. 1998) - this report is also relied upon by the plaintiffs to reiterate the allegation that "Abu Nidal (on behalf of Libyans) hijacked Pan Am 73, causing the death of several more Americans.".

<u>Id</u>. The above allegations, and the supporting documents referenced and cited by the plaintiffs, all pre-date the 2004 <u>Sunday Times</u> article and were specifically relied upon by the plaintiffs. Plaintiffs' Amended Complaint clearly contradicts plaintiffs opposition to Libya's motion for summary judgment as well as the declarations attached thereto.

If plaintiffs are no longer relying on their initial allegations of fact (which they relied upon to assert subject-matter jurisdiction) and now only rely solely upon two newspaper articles

as their support for their allegation of Libyan support for the hijacking of Pan Am Flight 73, the Court should grant Libya leave to file a renewed motion dismiss for lack of subject-matter jurisdiction.[2]

Plaintiffs abandonment of its former evidential materials and facts giving rise to subject-matter jurisdiction, based on the new assertion that Libyan support and involvement in the 1986 Pan Am hijacking only became know in 2004 by a newspaper article (solely supported by the confession of a convicted terrorist serving time in Pakistan), would clearly deprive the Court of subject-matter jurisdiction.[3]

Plaintiffs, in face of recently decided cases in the District of Columbia, and facing dismissal of their claims by the specific statute of limitation provision of the FSIA under 28 U.S.C. § 1605(f), seem to have changed their time-line to avoid such a dismissal.

---

[2] Curiously, plaintiffs' Exhibit K, a July 18, 2004 article from the South Asia Tribune confirms that the Government of Pakistan has reason to fabricate blame against Libya for the 1986 hijacking of Pan American Fligh 73 motivated by revenge for Libya's reveling to the United States and the International Atomic Energy Agency that Pakistan and its scientists were providing technical "know-how" to develop nuclear weapons to certain foreign sovereign states. (Plt. Exhibit K).

[3] The District of Columbia Circuit has consistently held that a court's inquiry into its subject-matter jurisdiction under the 1996 Terrorism Exception to the FSIA will depend on the nature of the defendant's challenge – if Libya only challenges the legal sufficiency of the plaintiff's jurisdictional allegations, the Court then should accept the plaintiff's allegations as true and then proceed to determine if the allegations satisfy any of the exceptions to foreign sovereign immunity codified within the FSIA.  But if Libya challenges "the factual basis of the court's jurisdiction the Court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiffs and disputed by the defendant.  Instead, the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39-40 (D.C. Cir. 2000): see also  Kilburn v. Socialist People's Libyan Arab Jamahiriya, 376 F.3d 1123  (D.C. Cir. 2004).

The record, as well as plaintiffs' own allegations of fact, clearly demonstrate that plaintiffs have been aware of allegations of Libyan involvement and support for the Abu Nidal Organization at least since 1987.  Plaintiffs' current assertion that they were only made aware of Libyan support for Abu Nidal in 2004 contradicts plaintiffs' <u>own</u> complaint and is clearly designed as a litigation tactic to avoid dismissal of time barred claims under the FSIA statute of limitation.

This change of position in the middle of briefing is simply unacceptable and plaintiffs may not simply contradict themselves when convenient.   It is clear that plaintiffs have been aware of the allegations against Libya since at least 1987.

## II.     2004 News Article Does Not Save Plaintiffs' Complaint

Even if plaintiffs' assertion is correct, despite its own contradicting Amended Complaint, (that plaintiffs were not aware of allegations of Libyan involvement until 2004) the Court should still dismiss plaintiffs' claims as time barred.  Plaintiffs conveniently ignore the most simple, and consistently reaffirmed, rule that a plaintiffs' complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  <u>Kingman Park Civic Ass'n v. Williams</u>, 348 F.3d 1033, 1040 (D.C. Cir.2003) (citing <u>FED. R. CIV. P. 8(a)(2)</u> and <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

Plaintiffs did not need to plead detailed allegations of fact and elements of their *prima facie* case in their Complaint or even "plead law or match facts" to their legal theories. <u>Swierkiewicz v. Sonoma N.A.</u>, 534 U.S. 506, 511-14 (2002);  <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir.2000).  The simplified notice pleading requirements would have allowed plaintiffs

to file their complaint long before their April 2006 filing before the Court.  Conley, 355 U.S. at 47-48.

Plaintiffs blame their two year delay in filing, even after supposedly learning the allegations against Libya in 2004, on the need for coordination of a large number of plaintiffs in "several countries", retention of "Crowell & Moring LLP as counsel, initiating Freedom of Information ACT ("FIOA") requests for United States Government reports, and conducting various (unspecified) investigation initiatives.

The first argument of plaintiffs, the need to coordinate a large number of plaintiffs in "several countries" is simply an argument designed to mislead the Court into a false belief that the "coordination" of the plaintiffs was a very complicated and difficult process.  The Court should keep in mind that the Motion for Summary Judgment only applies to Libya and the plaintiffs who are United State's Nationals.  Plaintiffs who were not United States Nationals at the time of the hijacking have only brought suit against the individual defendants in their individual capacities. Consequently the coordination of plaintiffs who were not, or are not, United States Nationals and do not reside in the United States has no bearing in the suit against Libya.  The remaining reasons for the two year delay in filing from 2004 are unpersuasive due to the liberal pleading requirements.  Plaintiffs have not pointed to any legitimate fact or complication which would have prevented them from acting in a timely manner.  The two year delay from the 2004 article in The Sunday Times remains a delay which justifies dismissal of plaintiffs claims under the statute of limitation provision of the FSIA.

### III. Plaintiffs' Claims Time Barred

Plaintiffs have cited a large number of cases in the hopes of creating an illusion that the issue of the statute of limitations under § 1605(f) has been decided in a converse fashion to Libya's position in its motion for summary judgment and that the two recently decided cases are contrary to the majority of cases and precedent within this Circuit. Plaintiffs also assert that Libya has ignored the cases cited within plaintiffs' opposition and has instead focused entirely on the decisions by Judge Kennedy and Judge Kessler.  Vine v. Republic of Iraq, 459 F.Supp.2d 10 (D.D.C. 2006) (Kennedy, J.);  Buonocore v. Great Socialist People's Libyan Arab Jamahiriya, __ F.3d__, 2007WL2007509 (D.D.C. 2007) (Kessler, G.).[4]  The Court should note that almost all the cases cited by the plaintiffs, with the exception of few cases discussed below, are default judgment cases against the Government of Iran where no defense was presented in any form.  In most cases the issue of statute of limitations was not raised and briefed by any defendant. Plaintiffs reliance on default judgment cases, with only the plaintiff's participation, is misplaced. Those decisions are erroneous and the Court should decline to follow cases where defendants failed to participate and the decision of the courts were guided solely by the plaintiffs.

Plaintiffs cite two further cases where the statute of limitations issue was addressed and the decisions were not default cases. In both Collett v. Socialist People's Libyan Arab Jamahiriya, 362 F.3Supp.2d 230, 242 (D.D.C. 2005) and Wyatt v. Syrian Arab Republic, 398 F.Supp.2d 131, 145 (D.D.C. 2005) (both decided by the Honorable Judge Urbina) the Court only

---

[4] The Court may take judicial notice that the plaintiffs' appeal in the matter of Buonocore has been dismissed as untimely by the United States Court of Appeals for the District of Columbia Circuit on January 4, 2008.  A copy of the Order of the Court of Appeals is enclosed for the Court's reference and review as Exhibit A.

provide conclusory statements without any real analysis about § 1605(f) and neither case, as noted by the Buonocore Court, consider the decision of the Court of Appeals in Phillips v. Heine, 984 F.2d 489, 491 (D.C. Cir. 1993). Buonocore, at 3.

Plaintiffs also surprisingly cite Cicippio v. Islamic Republic of Iran, 181 F.Supp.2d 62 (D.D.C. 1989) in support of their position that the ten-year statute of limitations does not bar their claims. Plaintiffs, however, conveniently fail to note that Cicippio was filed on June 31, 1996, within a few months of the amendment of 1996 Terrorism Amendment the FSIA. *See* Cicippio, *et al.* v. Islamic Republic of Iran, 96-CV-1805 (TJP). In that case plaintiffs filed their claims in a timely fashion and without excessive delay, unlike the plaintiffs in this case who waited for almost twenty years after the hijacking and almost ten years after the Amendment to the FSIA allowing an exception to foreign sovereign immunity for acts of terrorism.

Plaintiffs also impermissibly delve into Congressional intent. Generally, a Court should look to legislative history for guidance when the enacted text of a statute is capable of two reasonable readings, or when no one path of meaning is clearly indicated. It is now accepted that "where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meaning need no discussion." Caminetti v. United Sates, 242 U.S. 470 (1917). Where the language of the statute is plain and its application does not lead to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent. MacKenzie v. Hare, 239 U.S. 299, 308 (1915). The Court here need not make any inquiries into legislative intent as the language of 1605(f) is clear.[5] It is the duty of

---

[5] Even if the legislative intent of § 1605(f) were to be considered there is absolutely no evidence to support plaintiffs' assertion that Congress intended for the application of a uniform statute of limitations.

the Court "to give effect, if possible, to every clause and word of a statute." United States v. Menascheu, 348 U.S. 528, 538-539 (1955) (quoting Montclair v. Ramsdell, 107 U.S. 147, 152 (1883));  see also Williams v. Taylor, 529 U.S. 362, 404 (2000) (describing this rule as a "cardinal principle of statutory construction");  Duncan v. Walker, 533 U.S. 167, 174 (2001). The plaintiffs spend an inordinate segment of their opposition arguing that the Court should apply a statute of limitations application consistent with cases which have considered the Torture Victim Protection Act, 28 U.S.C. § 1350 ("TVPA") and cases which have considered the Alien Tort Claims Act ("ATCA").  Plaintiffs, however, fail to provide any sounds grounds as to why the Court should decline to follow the explicit and clear language of the FSIA, as well as the balanced and well reasoned analysis of two sister courts, and apply case law based on the TVPA and ATCA.  Libya will not repeat its entire argument, particularly relating to plaintiffs' watery argument relating to the distinction between "accrue" and "arise" and respectfully refers the Court to its opening brief.

**CONCLUSION**

For the foregoing reasons, the Court should grant Libya's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Rules of The United States District Court for the District of Columbia and dismiss plaintiffs' complaint with prejudice.

Dated:   January 14, 2008            Respectfully submitted,

                                                  //s//
                                                  Arman Dabiri
Law Offices of Arman Dabiri
 & Associates, P.L.L.C.
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
Tel. (202) 349-3893
E-mail: armandab@worldnet.att.net

*Counsel for Libyan Government Defendants*